IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| SERVICE DOGS BY WARREN | ) | Case No. 20-60860-RBC |
| RETRIEVERS, INC., | ) | Chapter 7 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| W. STEPHEN SCOTT, IN HIS CAPACITY | ) | |
| AS CHAPTER 7 TRUSTEE OF THE | ) | |
| BANKRUPTCY ESTATE OF SERVICE DOGS | ) | |
| BY WARREN RETRIEVERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No.  20-06045-RBC |
| | ) | |
| CHARLES D. WARREN, JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CHAPTER 7 TRUSTEE'S MOTION FOR A
## PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT THEREOF

W. Stephen Scott, in his capacity as Chapter 7 Trustee of the bankruptcy estate (the

"**Estate**") of Service Dogs by Warren Retrievers, Inc. (the "**Trustee**"), by counsel, pursuant to

Rule 65(a) of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7065 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**" or "**Rule**"), files this motion

(the "**Motion**") for (*i*) entry of a preliminary injunction enjoining the pending sale of certain real

property and improvements located at 1543 Beahm Town Road, Culpeper, Virginia 22701 and

commonly known as "Bordeaux Farms" (the "**BF Property**"), or (*ii*) in the alternative, if the

pending sale is to a third party purchaser for fair market value, entry of an order authorizing the

.

sale of the BF Property but requiring that the net proceeds of sale, after payment of the lien of

Spotts Fain (the "**SF Lien**") and customary costs of sale, be held in escrow pending the resolution

of the above-captioned adversary proceeding (the "**Adversary Proceeding**").  In support of the

Motion, the Trustee states as follows:

<b><u>JURISDICTION AND VENUE</u></b>

1.      This Court has jurisdiction to consider this Motion and the relief requested herein

pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §

157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief sought herein are section 105(a) of the United States

Bankruptcy Code (the "**Bankruptcy Code**") and Bankruptcy Rules 3007, 7001(7), and 7065.

<b><u>BACKGROUND</u></b>

3.      On May 29, 2020 (the "**Petition Date**"), Service Dogs by Warren Retrievers, Inc.

(the "**Debtor**") commenced with the United States Bankruptcy Court for the Eastern District of

Virginia (the "**Court**") a voluntary case under Chapter 7 of the Bankruptcy Code.

4.      The Debtor is a 501(c)(3) charitable organization.  Its purported charitable purpose

was to raise, train, and place service dogs with people with "invisible disabilities," such as autism,

diabetes, and post-traumatic stress disorder.

5.      In reality, the Debtor was part of a fraudulent scheme orchestrated by Charles D.

Warren, Jr ("**Warren**"), the Debtor's founder, President, and Chairman of the Board of Directors,

misappropriate the charitable contributions made to the Debtor and to use such funds for his

personal enrichment and benefit.  The service dogs delivered by the Debtor to purchasers, who

each generally raised $25,000 in donations for a service dog (the "**Recipients**"), often had

2

unsuitable temperaments or inadequate training to fulfill their intended purpose as a service dog. Worse yet, many of the Recipients never received a service dog at all.

6.      Warren received compensation from the Debtor in excess of $175,000 per year, and most, if not all, of his expenses were paid by the Debtor. The Debtor paid for the upkeep, maintenance, and improvements on the BF Property, Warren's 150+ acre farm in Madison County, which is owned by Bordeaux Farms, LLC ("**Bordeaux Farms**"), a single-member, special purpose entity ("**SPE**") formed by Warren for the express purpose of taking title to Bordeaux Farms and shielding it from creditors.  Warren and his spouse, Jacob Dudek-Warren ("**Dudek**"), lived on the BF Property and operated Bordeaux Livestock, LLC ("**Bordeaux Livestock**"), an organic livestock and farming business, from the BF Property.  Warren used money from the Debtor to make permanent improvements to the BF Property, including but not limited to significant renovations to the house and other living quarters and the construction and fit-out of horse stables, dog kennels, and numerous outbuildings and storage sheds.  He purchased multiple trucks and custom made trailers, as well as a luxury motorhome, all allegedly to facilitate the Debtor's business, but which were also used by Warren and Dudek for personal travel and vacations.

7.      By misappropriating the donations made by Recipients to the Debtor, Warren was able to enjoy a very comfortable lifestyle.  He and Dudek lived rent free in the residence on the BF Property, which is subject to a pending contract for sale with a list price $1.5 million.  They took extravagant vacations, often travelling in the luxury motorhome owned by the Debtor, and neither one held a job outside of the Debtor.

8.      Eventually, Warren's scheme began to unravel.  He received national negative publicity based on his business practices as early as 2016, including but not limited to a segment on the nationally-broadcast "Dr. Phil" show.  Despite the negative publicity, he did not change his

business practices.  Instead, he continued to sell dogs at a very aggressive rate.  He sold more dogs than he could possibly deliver, and he could not refund the money donated by Recipients because he had already spent it. In May 2018, the Attorney General for the Commonwealth of Virginia filed a complaint in the Circuit Court for Madison County, Virginia, against the Debtor and Warren, alleging violations of the Virginia Consumer Protection Act and the Virginia Solicitation of Contributions law.  In November 2020, several of the Recipients filed a complaint in the United States District Court for the Eastern District of Virginia against Warren, Dudek, Bordeaux Farms, Charitable Occasion, LLC ("**Charitable Occasion**") and Marianne Warren ("**Marianne**"), Warren's mother, alleging, among other things, RICO and conspiracy claims.

9.      In the months prior to the bankruptcy filing, Warren liquidated substantially all the Debtor's assets, including vehicles, trailers, dogs, kennel supplies, and office furniture and equipment.  At least some of the vehicles and trailers were transferred to former employees and other "friendly" parties.  Warren also liquidated the Debtor's breeding stock and dogs in training at a roadside "bonding event" held less than two months prior to the Petition Date (as defined below).  Eventually, after selling or transferring substantially all the Debtor's assets,  Warren shut down the Debtor's business operations.  At the time of the bankruptcy filing, the Debtor's sole asset identified on Schedule A was $73.58 cash on hand.  *See* Schedule A/B [Docket No. 19].

10.      On June 22, 2020, the Meeting of Creditors was held pursuant to Section 341 of the Bankruptcy Code and was continued to July 10, 2020 and concluded (the "**341 Meeting**").  At the 341 Meeting, the Trustee questioned Warren, as the Debtor's representative, about Bordeaux Farms and the BF Property.  The Trustee also questioned Warren about Charitable Occasion, another SPE wholly-owned and controlled by Warren, which owns an approximately 75 acre

4

parcel of real property (the "**CO Property**") adjacent to the BF Property.  Bordeaux Farms and Charitable Occasion are hereinafter referred to as the "**Related Entity Defendants**."

11.    Based on documentation currently available to the Trustee, the Debtor, at Warren's direction, transferred funds to Bordeaux Farms and Bordeaux Livestock, to pay their expenses and support their operations.  In addition to these transfers, the Debtor paid rent to Bordeaux Farms at an above-market rate for the use of kennels and office space on the BF Property.  The Debtor funded the construction of the kennels, as well as other capital improvements to the BF Property, including but not limited to renovations to the house and other living quarters and the construction of horse stables, storage buildings and other outbuildings.

12.    The Debtor listed 180 unexpired service dog contracts on its Schedule G [Docket No. 19].  Some, if not all, of those contracts are with families who never received a dog.  Of the 116 claims filed in the Bankruptcy Case, the vast majority, in both number and dollar amount, were filed by individuals who had service dog contracts with the Debtor.  These claims comprise approximately $1.8 million of the total general unsecured claims pool of $2.21 million. These families, who all raised funds towards the purchase of a puppy, are left empty-handed and broken-hearted, while Warren and Dudek have the BF Property under contract for sale at a list price of $1.5 million and are, upon information and belief, looking for a new farm in Florida.

13.    On October 7, 2020, the Court entered an *Order Granting the Trustee's Motion for Rule 2004 Exam* [Docket No. 53] (the "**Rule 2004 Order**"), authorizing the Trustee to subpoena multiple parties in an effort to gather more information about Warren, Dudek, Marriane, the Related Entity Defendants, other entities controlled by Warren, and the fraudulent scheme.  The Trustee has received several responses to subpoenas issued pursuant to the Rule 2004 Order and has been diligently reviewing the subpoena responses.

14.     On December 29, 2020, the Trustee became aware that the BF Property is under contract.  The Trustee has no further information about the sale, including the identity of the purchaser, sale price, anticipated  closing date, or any contingencies in the sale contract.

15.     On December 30, 2020, the Trustee filed a complaint (the "**Complaint**") against Warren and the Related Entity Defendants, thereby initiating the Adversary Proceeding.  The claims asserted by the Trustee in the Complaint include, among other things, (a) veil piercing, (b) reverse veil piercing, (c) substantive consolidation, (d) declaratory judgment deeming Bordeaux Farms a constructive trust, (e) avoidance of the transfer of the BF Property to Bordeaux Farms pursuant to section 548(e)(1) of the Bankruptcy Code and recovery of the BF Property for the benefit of the Estate, and (f) injunctive relief enjoining the sale of the BF Property or, if the proposed sale is to a third party purchaser for fair market value, ordering that the net proceeds of sale, after payment of the SF Lien and the customary costs of sale, to be held in escrow pending resolution of the disputes between the Trustee, Warren, and the Related Entity Defendants.

16.     The Trustee incorporates the allegations made in the Complaint as if fully set forth herein.

## RELIEF REQUESTED

17.     Because of the impending sale of the BF Property and the irreparable harm such sale will cause to the creditors of the Estate if the proceeds of sale are turned over to Warren, as agent for Bordeaux Farms, and then dissipated, the Trustee has filed this Motion seeking a preliminary injunction enjoining the sale of the BF Property or, if the proposed sale is to a third party purchaser for fair market value, ordering that the net proceeds of sale, after payment of the SF Lien and the customary costs of sale, to be held in escrow pending resolution of the disputes between the Trustee, Warren, and the Related Entity Defendants.

## ARGUMENT

18.     Federal Rule of Civil Procedure 65, made applicable to this proceeding through Rule 7065, authorizes the Court to issue a preliminary injunction upon notice to the adverse party. Fed. R. Civ. P. 65(a)(1).  "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (quoting *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 at n.12 (1987)).

19.     A plaintiff seeking a preliminary injunction must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (overruled in part on other grounds) (quoting *Winter*, 555 U.S. at 24).

A.    THE TRUSTEE IS LIKELY TO SUCCEED ON THE MERITS.

20.    While the Trustee is still in the beginning stages of his investigation, he has adequate evidence to satisfy the elements of veil piercing and reverse veil piercing, substantive consolidation, and/or constructive trust and fraudulent transfer.

(1)    Veil Piercing and Reverse Veil Piercing

21.    First, the Trustee has asserted claims against Warren for the veil piercing and the Related Entity Defendants for reverse veil piercing. In determining whether to pierce or reverse pierce the corporate veil, the courts examine numerous factors, including the impact of such action upon innocent investors, the impact of such an act upon innocent secured and unsecured creditors, and the availability of other remedies the creditor may pursue. *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 13 (2003). Additionally, to succeed on a veil piercing or reverse veil piercing claim, the plaintiff must show that (a) "the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetuate fraud or a crime, to commit an injustice, or to gain an unfair advantage"; and (b) "the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice." *Id.* at 10, 13 (citing *Greenberg v. Commonwealth*, 499 S.E.2d 266, 272 (1998)).

22.    For all the reasons stated in the Complaint and to be proven at a hearing on the Motion, these elements are satisfied with respect to Warren and the Related Entity Defendants. First, Warren is clearly in control of the Debtor, as its founder, President, and Chairman of the Board of Directors. Warren is also in control of the Related Entity Defendants, as the sole member with complete decision-making authority. Second, Warren used the Debtor and Related Entity Defendants to perpetuate his fraudulent scheme of soliciting donations from Recipients and

8

misappropriating those donations for his own personal use and benefit.  Third, there is an obvious unity of ownership and identity between the Debtor, the Related Entity Defendants and Warren; Warren was the public face and person in control of all the entities.  Fourth, there was no separation of the assets of the Debtor from those of Warren and the Related Entity Defendants.  Warren treated the Debtor's funds and assets as a common pool to be used for his personal benefit, as well as the benefit of the Related Entity Defendants.  Fifth, as discussed above, Warren's actions had a tremendous impact on the Debtor's innocent creditors, who eagerly anticipated that a service dog would solve many of their problems, not cause more angst and heartache.  Finally, because Warren dissipated essentially all the Debtor's assets prior to the bankruptcy filing, the creditors have no options for a meaningful recovery other than veil piercing, reverse veil piercing, and substantive consolidation.

(2) <u>Substantive Consolidation</u>

23.    The Trustee has asserted a claim for substantive consolidation of Warren and the Related Entity Defendants with the Debtor.  Bankruptcy courts have the authority to order substantive consolidation of non-debtor entities under the broad equitable power granted to them under section 105(a) of the Bankruptcy Code.  The inquiry is fact-intensive and examines a variety of factors.  In *Drabkin v. Midland Ross Corp. (In re Auto-Train Corp., Inc.)*, 810 F.2d 270 (D.C. Cir. 1987), the Circuit Court for the District of Columbia held that the proponent of substantive consolidation must demonstrate that: (a) there is substantial identity between the entities to be consolidated; and (b) consolidation is necessary to avoid some harm or to realize some benefit. In *Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.)*, 860 F.2d 515, 518 (2d Cir. 1988), the Second Circuit adopted a similar standard for determining whether consolidation is appropriate and identified nine factors to be considered:  (i) fraud or other

complete domination of the corporation that harms a third party; (ii) the absence of corporate formalities; (iii) inadequate capitalization of the corporation; (iv) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (v) overlap in ownership and management of affiliated corporations; (vi) whether affiliated corporations have dealt with one another at arm's length; (vii) the payment or guarantee of debts of the dominated corporation by other affiliated corporations; (viii) the commingling of affiliated corporations' funds; and (ix) the inability to separate affiliated corporations' assets and liabilities.

24.     For all the reasons stated in the Complaint and to be proven at a hearing on the Motion, an analysis of these factors weighs in favor of substantive consolidation of Warren and the Related Entity Defendants  with the Debtor.  As discussed above, Warren is the Debtor and the Related Entity Defendants.  While the Debtor ostensibly had a Board, Warren is the sole decision-making authority for each of the Debtor and Related Entity Defendants, and Warren's actions and decisions have caused great harm to creditors.  The Debtor and the Related Entity Defendants did not deal with one another at arm's length, and the Debtor essentially guaranteed payment of the debt to SF because the Related Entity Defendants own property, but have no cash.  Warren treated the funds and assets of the Debtor as a common pool to be used for his benefit, as well as for the benefit of the Related Entity Defendants.  Warren withdrew money from the Debtor's account and transferred it to Bordeaux Farms or Bordeaux Livestock.  Warren used the Debtor's financial resources to make capital improvements to the BF Property. In short, substantive consolidation of the Debtor, Warren, and Related Entity Defendants is appropriate because (a) the Debtor, Warren and the Related Entity Defendants have intermingled their financial affairs to the point that it is difficult to separate them and it is  unfair to creditors to treat them separately and (b) the creditors of Warren and the Related Entity Defendants will not be prejudiced by substantive consolidation,

whereas the creditors of the Debtor will be greatly prejudiced if substantive consolidation does not

occur.

(3) <u>Constructive Trust and Avoidance of Fraudulent Transfer</u>

25.     The Trustee has requested that the Court enter a declaratory judgment that

Bordeaux Farms is a constructive trust created for the benefit of Warren, as the alter ego of the

Debtor, and that the Court avoid the transfer of the BF Property to Bordeaux Farms as a fraudulent

transfer pursuant to section 548(e)(1) of the Bankruptcy Code.

26.     The imposition of a constructive trust is an equitable remedy intended to prevent

unjust enrichment and often involves a finding of fraud.  *See Greenspan v. Osheroff*, 351 S.E.2d

28, 36-37 (1986); *Campbell v. Corpening*, 334 S.E.2d 589, 592 (1985).  Upon purchasing the BF

Property in November 2011, Warren immediately transferred the BF Property, by Deed of

Contribution, to Bordeaux Farms.  The transfer of the BF Property to Bordeaux Farms - an SPE

with little liability exposure – was intended to shield the BF Property from attachment by Warren's

and the Debtor's creditors.

27.     Here, Warren, acting by and through the Debtor, has defrauded the Recipients.  He

misappropriated the money donated by the Recipients to obtain a service dogs and used those funds

to fund his lavish lifestyle, including but not limited to the payment of maintenance and operating

expenses for the BF Property.  The Debtor paid above-market rent for its use of the kennels and

office space on the BF Property.  The Debtor also made payments to SF for legal fees incurred by

Bordeaux Farms and Charitable Occasion.  Most significantly, the Debtor paid for capital

improvements to the BF Property, including but not limited to renovations to the house and other

living quarters and the construction of stables, kennels, storage buildings and outbuildings.

28.     The improvements paid for by the Debtor to the BF Property are in large part the reason why the BF Property has more than doubled in value.  Warren purchased the BF Property for $650,000 in November 2011 and now has it under contract with a list price of $1.499 million in December 2020.  Warren would be unjustly enriched at the expense of creditors if he were allowed to retain ownership of Bordeaux Farms and the BF Property and reap the rewards of all the improvements made to the BF Property by the Debtor, through and as a direct result of the donations of the Recipients, over 100 of whom are now creditors in this Bankruptcy Case.  For these reasons, Bordeaux Farms should be deemed a  constructive trust.

29.     Section 548(e)(1) of the Bankruptcy Code authorizes a trustee to avoid a transfer of property to a "self-settled trust or similar device"  within ten years of filing of the Petition Date.  The constructive trust in this case is similar to a self-settled trust, in that Warren established it for his own benefit.  As such, the transfer of the BF Property to Bordeaux Farms should be avoided and set aside as an avoidable fraudulent transfer pursuant to section 548(e)(1) of the Bankruptcy Code.

**B.      The Estate Will Likely Suffer Irreparable Harm Absent Injunctive Relief**

30.     At Warren's direction, the Debtor transferred all its assets prior to the Petition Date.  As set forth in its Schedule A, the Debtor's only asset is $73.

31.     Warren directed the Debtor to support financially his lifestyle and the operations of the Related Entity Defendants.  Now that the Debtor is insolvent, Warren disbursed all the Debtor's assets, outside of the reach of its creditors, yet he is in a position to retain for his sole benefit the value of BF Property.

32.     Because the Debtor has no assets, the creditors have little chance of obtaining a meaningful distribution from the Debtor. However, given the overlapping identities, common control and ownership, and comingled financials and other assets of Warren, the Debtor, and the

Related entities, there is a strong case for the Trustee's claims of corporate veil piercing/reverse corporate veil piercing  and substantive consolidation against Warren and the Related Entity Defendants (and, specifically as it relates to this Motion, against Bordeaux Farms).  Additionally, the transfer of the BF Property to Bordeaux Farms is an avoidable fraudulent transfer.

33.    The only significant assets available to pay the numerous defrauded Recipients and other creditors in this case is the BF Property[1].  To allow Warren and Bordeaux Farms to sell the BF Property and potentially disburse the proceeds beyond the reach of the Trustee and the Estate would effectively force the Trustee to declare this a no asset bankruptcy case.  Under that scenario, creditors will receive nothing, and Warren will pocket over $1 million after payment of the SF Lien and costs of sale. This would be devastating to the creditors.

### C.    The Balance of Equities Weighs in the Trustee's Favor

34.    The risk of harm to the Trustee and the Estate if injunctive relief is not granted *far* outweighs any potential harm to the Defendants.  For balance of equities, "courts consider the conduct of the parties, whether the injunction is more extensive than necessary, and the impact of the injunction on the adverse party."  *Chesapeake Bank v. Berger*, No. 4:14-cv-66, 2014 WL 11517810, at *4 (E.D.Va. July 14, 2014) (citing *Z-ManFishing Prods, Inc. v. Renosky*, 790 F.Supp.2d 418, 434 (D.S.C. 2011)); *Splitfish AG v. Borneo Corp.*, 727 F.Supp.2d 461, 468 (E.D.Va. 2010).  The only meaningful avenue of recovery for creditors in this Bankruptcy Case is the proceeds of sale of the BF Property.  If the BF Property is sold and the net sale proceeds are dissipated prior to resolution of the Adversary Proceeding, the Trustee may prevail on the merits, but he will have no way to satisfy his judgment.

---

[1] Charitable Occasion also owns the CO property, which is not subject to this Motion.  The CO Property is unimproved and has significantly less value than the BF Property.

35.     If preliminary injunctive relief is granted, the BF Property or its value will be preserved for the benefit of creditors of the Estate, at least pending resolution of the disputes between the Trustee, Warren and the Related Entity Defendants.  Ultimately, if the Court determines that no wrongdoing has occurred and the Trustee is not entitled to judgment on any of the claims asserted in the Complaint, Bordeaux Farms will be allowed to sell the BF Property.

36.     As previously stated, if the pending sale of the BF Property is to a third party purchaser for fair market value, the Trustee does not seek to prevent the sale, but simply seeks entry of an order that the proceeds of sale, net payment of the SF Lien and customary costs of sale, be held in escrow pending the resolution of the adversary proceeding.  Under these circumstances, there can be no harm to the Bordeaux Farms, other than perhaps minimal costs associated with the passage of time.   The balance of the equities clearly weighs in favor of granting the preliminary injunction.

**D.  Granting the Preliminary Injunction Furthers the Public Interest.**

37.     The public interest is served by granting the preliminary injunction.  "Ensuring a creditor is able to recover on its debts is in the public interest." *Chesapeake Bank*, 2014 WL 11517810 at *4.  The Trustee, as an officer of the Court, has a duty to marshal the Debtor's assets for the benefit of the creditors.  Unfortunately, in this case, the Debtor has only $73, even though it generated, on an annual basis, over $1 million in revenues.  The Trustee has to look beyond the debtor's immediate asset of $73, if he hopes to make any distribution to creditors.

38.     The public interest is also served by allowing a full and thorough investigations of the Trustee's claims of fraud and misappropriation.  If Warren has in fact directed the Debtor to engage in a fraudulent scheme, he should not be allowed to reap the rewards of his bad acts.  Only by granting the preliminary injunction will the Trustee have a full and fair opportunity to

14

investigate the potential fraud and take actions that will benefit the creditors, many of whom are innocent victims of the Debtor's fraudulent scheme.

39.    Based on the foregoing, the Motion should be granted.  The Trustee is likely to prevail on the merits of the claims alleged in the Complaint with respect to veil piercing/reverse veil piercing, substantive consolidation, and/or constructive trust and fraudulent transfer.  The recovery of the net proceeds of sale of the BF Property for the benefit of creditors is the only avenue to a meaningful distribution in this case.  For that reason, the potential harm to the creditors of not granting the preliminary injunction far outweighs the potential harm to Warren and Bordeaux Farms if the preliminary injunction is granted.  Finally, the public interest weighs in favor of granting the preliminary injunction for the purpose of preserving a potential avenue of recovery for the creditors pending final resolution of the Adversary Proceeding.


*REMAINDER OF PAGE INTENTIONALLY BLANK*

## Conclusion

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Motion and enter an Order, substantially in the for attached hereto as **Exhibit A** granting a preliminary injunction: (i) enjoining the pending sale of the BF Property, or, in the alternative, (ii) requiring that the net proceeds of sale, after payment of the SF Lien and customary costs of sale, be held in escrow pending entry of a further order of this Court.

Dated: December 31, 2020

Respectfully submitted,

W. STEPHEN SCOTT, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF SERVICE DOGS BY WARREN RETRIEVERS, INC.

   */s/ Robert S. Westermann*

Robert S. Westermann (VSB No. 43294)
Kristen E. Burgers (VSB No. 67997)
Brittany Falabella (VSB No. 80131)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:   804.771.9500
Facsimile:   804.644.0957
E-mail:   rwestermann@hirschlerlaw.com
   kburgers@hirschlerlaw.com
   bfalabella@hirschlerlaw.com

*Counsel for W. Stephen Scott, Chapter 7 Trustee for the Bankruptcy Estate of Service Dogs by Warren Retrievers, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2020, a true and complete copy of the foregoing Motion as filed and served electronically using the Bankruptcy Court's ECF System and was also sent via e-mail and first-class mail, postage prepaid, to the parties set forth below at the address indicated.

Paul J. Feinman, Esq.
Petty, Livingston, Dawson & Richards
P.O. Box 1080
Lynchburg, VA 24505
PFeinman@pldrlaw.com

Wyatt B. Durrette, Esq.
Christine A. Williams. Esq.
Kevin J. Funk, Esq.
Durrette Arkema Gerson & Gill PC
1111 East Main Street, Floor 16
Richmond, VA 23219
wdurrette@dagglaw.com
cwilliams@dagglaw.com
kfunk@dagglaw.com

Stephen E. Dunn, Esq.
201 Enterprise Drive, Suite A
Forest, VA 24551
stephen@stephendunn-pllc.com

W. Joel Charboneau, Esq.
United States Department of Justice
Office of The United States Trustee
210 First Street, S.W., Suite 505
Roanoke, VA 24011
Joel.charboneau@usdoj.gov

      /s/ Robert S. Westermann
         Counsel

17

**<u>Exhibit A</u>**

.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| SERVICE DOGS BY WARREN | )   Case No. 20-60860-RBC |
| RETRIEVERS, INC., | )   Chapter 7 |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| W. STEPHEN SCOTT, IN HIS CAPACITY | ) |
| AS CHAPTER 7 TRUSTEE OF THE | ) |
| BANKRUPTCY ESTATE OF SERVICE DOGS | ) |
| BY WARREN RETRIEVERS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Adv. Pro. No.  20-06045-RBC |
| | ) |
| CHARLES D. WARREN, JR., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING PRELIMINARY INJUNCTION**

This matter came before the Court upon the *Chapter 7 Trustee's Motion for Temporary*

*Restraining Order and Preliminary Injunction and Memorandum in Support Thereof* (the

.

"**Motion**")[2] filed by W. Stephen Scott (the "**Trustee**"), in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Service Dogs by Warren Retrievers, Inc. (the "**Debtor**"), by and through his undersigned counsel, for entry of an order pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") enjoining the sale of certain real property and improvements located at 1543 Beahm Town Road, Culpeper, Virginia 22701 (the "**BF Property**"), or in the alternative, requiring that the net proceeds of sale, after payment of the lien of Spotts Fain and the customary costs of sale, be held in escrow pending resolution of the above-captioned adversary proceeding (the "**Adversary Proceeding**"); and it appearing to the Court that the Motion and Notice thereof were properly served on all necessary parties; and the Court finding good and sufficient cause for entry of this Order, it is hereby:

### ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.      The Motion is **GRANTED** pursuant to the terms set forth in the Motion and herein; and it is further

2.      **ORDERED** that Bordeaux Farms, LLC, is temporarily enjoined from closing on the sale of the BF Property until further order of this Court *[OR: ORDERED that the net proceeds of sale of the BF Property, after payment of the lien of Spotts Fain and customary costs of sale, be held in escrow pending further order of this Court]*; and it is further

3.      **ORDERED** that the Court shall retain jurisdiction to interpret, clarify, supplement, and/or enforce this Order; and it is further

4.      **ORDERED** that the terms of this Order are immediately enforceable and not subject to any applicable stay.

*\*\*End of Order\*\**

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

We ask for this:

  */s/  Robert S. Westermann*

Robert S. Westermann (VSB No. 43294)
Kristen E. Burgers (VSB No. 67997)
Brittany B. Falabella (VSB No. 80131)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:      804.771.9500
Facsimile:      804.644.0957
E-mail: rwestermann@hirschlerlaw.com
      kburgers@hirschlerlaw.com
      bfalabella@hirschlerlaw.com

*Counsel for W. Stephen Scott, Chapter 7 Trustee*
*of the Estate of Service Dogs by Warren Retrievers, Inc.*

Seen and _____:

  */s/*_____
\*\*\*
*Counsel for Defendants*

Seen and no objection:

  */s/*_____
W. Joel Charboneau (VSB No. 68025)
United States Department of Justice
Office of The United States Trustee
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
540-798-8323 (Cell)
540-857-2844 (Fax)

*Office of the U.S. Trustee*

3